# EXHIBIT B



| | |
|---|---|
| **CLAIMANT:** | **Boustead Securities LLC** |
| **RESPONDENT:** | **UNation, Inc.** |
| **JAMS Case No.** | **1410008338** |
| **ARBITRATOR:** | **Judge Sherrie L. Krauser, ret.** |
| **CASE MANAGER:** | **Salvador Sauceda-Guzman** |

## Arbitration Award

On or about August 17, 2017, Claimant Boustead Securities LLC (Boustead) and Respondent UNation, Inc. (UNation) entered into a contract in which Boustead agreed to provide advisory and underwriting services to enable UNation to be listed by the Securities & Exchange Commission (SEC) for public investment, in exchange for specified compensation. *Joint Exhibit 1*.

Boustead contends that UNation breached that contract[1] by failing to provide an accounting of investments made during and after the contract period and failing to pay Success Fees in cash and warrants based on those investments.

UNation contends that it owes Boustead no Success Fees because all investments resulted from its own efforts. UNation suggests that if Boustead were paid any Success Fees, those fees must be limited to fees earned before Boustead allegedly abandoned the contract.

The parties agree that UNation paid Boustead the requisite Advisory Services fee but has paid nothing toward Success Fees.

**I.    Jurisdiction**

The contract between the parties provides that "[a]ny controversy or claim relating to or arising from this Agreement . . . shall be settled by arbitration in accordance with the . . . Arbitration Rules of [JAMS]." *Joint Exhibit 1, Section 8*.  Accordingly, Boustead filed its Demand for Arbitration with JAMS, on October 15, 2019.

---

[1] In its Statement of Claim, Boustead sought relief for breach of contract, unjust enrichment, accounting, and breach of duty of good faith and fair dealing; however, it now seeks damages only for breach of contract.

The contract further establishes Kent County, Delaware as the forum for arbitration. However, because of the current COVID pandemic, the parties and counsel agreed that the arbitration would be held electronically, with all parties and witnesses appearing before this arbitrator through Zoom from their chosen locations, and not in person.

## II.     Hearing

The arbitration hearing was conducted before this arbitrator by Zoom on September 23, 24 and 27, 2021. Both parties were represented by counsel, and each presented several witnesses. The parties introduced 173 joint exhibits, admitted without objection.

## III.    Breach of Contract Claim

The contract at issue is an "exclusive, best efforts engagement" of Boustead for underwriting and advisory services to support UNation's expansion plan.

UNation agreed to pay Boustead $50,000 for its advisory services. *Joint Exhibit 1, Section 2(c)*. The parties agree that UNation fulfilled its obligation in that regard, albeit belatedly.

UNation also agreed to pay Boustead Success Fees in cash and warrants, based on a stated percentage of investments made in UNation during the contract period and by the same investors during the following year. The parties agree that the only relevant investments are "equity investments" enumerated in the contract. *Joint Exhibit 1, Section 2(a)(iii)*.

Boustead asserts that it met its obligations under the contract, but that UNation breached their contract by failing to provide either the accounting or payment of Success Fees as required. UNation contends that it does not owe Boustead any Success Fees, but if it does, those fees must relate to investments made before Boustead allegedly abandoned the contract in the Spring of 2018.

## IV.    Findings of Fact

The parties presented exhibits, witnesses and arguments during a three-day hearing. Both parties were ably represented by counsel, and presented credible witnesses, albeit with differing recollections of specific events. I have considered all arguments, weighed the evidence, and now summarize the facts as I find them.

### A.     Contract Drafting

John Bartoletta, founder and CEO of UNation, Inc. (formerly UNation LLC) and Dan McClory, Head of Equity Capital Markets for Boustead Securities, LLC, met informally in the Spring of 2017. Over the next several months, with input from others in their firms, they spoke and emailed frequently, discussing their mutual interest in working

to expand UNation through a public stock offering, negotiating terms of their proposed engagement, and reviewing draft documents. *Joint Exhibits 2, 3, 4, 13, 16, 17*. As part of its "due diligence" to determine the viability of UNation for that process, Boustead considered and rejected an internal warning against that engagement. *Joint Exhibits 5, 11*. Keith Moore, Boustead CEO, testified that he had great confidence in Bartoletta based on their conversations and Bartoletta's proven business acumen and experience. *Testimony of Dan McClory, Testimony of Keith Moore*.

The final contract evidenced the parties' negotiations, including terms sought by UNation such as extending the time for payment of the initial advisory fee and changing the governing law and forum for any dispute. *Joint Exhibits 21, 25*.

On August 17, 2017, the parties entered into a contract, *Joint Exhibit 1*, defined as an "exclusive best efforts engagement" by which Boustead would guide UNation into listing on The Nasdaq Capital Market for capital investment and serve as its underwriter in exchange for specified compensation. UNation immediately distributed a confidential Investor Update to its investors announcing Boustead's engagement, in a document drafted by Bartoletta with input from McClory. *Joint Exhibits 18, 19, 20, 24*.

### B. Activity during Contract Period

The parties expected the process to run smoothly and result in an IPO in January, 2018. *Joint Exhibit 23*. That timeline anticipated that UNation would engage a qualified auditor by October 2, 2017 and provide that auditor with all necessary financial information by October 30, 2017.

That did not happen. Although Bartoletta had never worked with an investment banker before, UNation had recently completed a RegA+ filing and he anticipated a similar process. *Testimony of John Bartoletta*. Boustead learned that UNation's attorneys and accountants were not experienced in producing the audit and legal documents needed for an IPO filing, and that it did not have a "financial expert" on its Board, as the SEC requires. Undeterred by an FBI investigation of UNation's finances in October, 2017, McClory sent repeated emails to UNation from August through November, 2017, to guide UNation through the SEC requirements. That guidance included referring UNation to Luisa Ingargiola, an audit expert, for its Board, and to SEC-experienced auditors. He also encouraged production of financial records for preparation of the audit, and revised the timeline for the IPO to accommodate that delay. *Joint Exhibits 27, 30, 33, 36, 42, 44*.

Boustead established that its efforts were circumscribed by UNation's delay in retaining appropriate auditors and attorneys for the IPO process. Ingargiola, brought on board on October 16, 2017, formed an IPO team including representatives from Boustead and UNation and various consultants. *Testimony of Luisa Ingargiola*. On December 6, 2017, UNation provided its investors with an update, including the announcement of new auditors and attorneys for their IPO team. *Joint Exhibit 47*.

3

On February 5, 2018, with the audit still incomplete and attorneys working on the SEC filing documents, UNation issued a press release announcing: "UNation Engages Boustead Securities as Underwriter for IPO and Plans Listing on a National Exchange." *Joint Exhibits 76, 78, 79, 80.* One week later, UNation's counsel submitted its draft Offering Statement, proposing to file it without the audit. *Joint Exhibits 83, 86, 88, 89.* Most of the UNation IPO team reviewed and offered revisions to that draft. *Joint Exhibits 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100.*

On February 23, 2018, at 11:53 am Eastern time, Andrew Stephenson, counsel for UNation, emailed everyone on the IPO team, including Bartoletta and McClory, asking them to respond to Boustead's objections to the draft. *Joint Exhibit 102.* Keith Moore, Boustead CEO, almost immediately (9:14 am Pacific time/12:14 pm Eastern time) emailed his concerns to McClory, concluding that:

> I do not think Luisa [Ingargiola] and her team is *[sic]* capable of addressing these deficiencies as they don't really understand them. I'd rather take a fresh approach and have someone else do the drafting from here which will cause it to be delayed and cost UNATION more money but will result in a much better end product and one that we would want to submit with Boustead as underwriter.

*Joint Exhibit 101.* McClory responded at 6:19 a.m. the next day, Saturday, February 24, 2018, saying that "we have to be brutally honest with UNation on ALL these points," and offered to contact Ingargiola to let her know "that they need to change attorneys" to prepare a document suitable for filing. *Joint Exhibit 103.*

On Sunday, February 25, 2018, McClory left a message for Ingargiola and spoke with Bartoletta, recommending Louis Bevilacqua as an attorney with the requisite experience, and reported back to Moore. *Joint Exhibit 104.* Ingargiola responded, suggesting filing the draft prepared by current counsel Andrew Stephenson and amend it later. McClory responded that Bartoletta expected the audit to be completed by March 13, so "I don't see the problem with waiting 2 weeks to file the new 1-A properly with a new issuer's counsel including the audit. . . . [T]he low quality level of the current 1-A would also now *(sic)* win us any friends at the SEC, Nasdaq or FINRA." *Joint Exhibit 105.* On Monday, February 26, 2018 at 5:39 a.m., Bartoletta sent Moore a text message saying:

> I need the early filing in for the momentum and capital pre raise for my entire network. I need to save face a little. So if we can work this new strategy and Keith [Moore] can get me the data to make this initial filing stronger. Then I'll move ASAP on the new ATTY and strong re-write for the final.

*Joint Exhibit 107.* McClory replied by email to Bartoletta on the same day:

> I spoke to Keith [Moore], and if you want to temporarily remove Boustead from the 1-A filing you are intent on submitting to the SEC now, as-is, then

4

> that's OK.  Boustead can resurface when new UNation legal counsel Lou Bevilacqua and the audited financials are added in 2 weeks.

*Joint Exhibit 108.*   Later that day, Andrew Stephenson reported to the UNation IPO team that the SEC will not accept un-audited filings "at all" as he had proposed.  *Joint Exhibit 110.*   That report negated the efforts of Bartoletta, Ingargiola and Stephenson to file without a completed audit.

On Wednesday, February 28, 2018, UNation's legal adviser Gregg Jaclin reported to Boustead that UNation was retaining Louis Bevilacqua to prepare the filing, as Boustead suggested.  *Joint Exhibit 114.*  McClory then prepared a new timeline, anticipating audit completion on March 16, filing the new application on March 23, two rounds of SEC comments and approval by May 18, followed by a month of marketing culminating in trading on Nasdaq on the week of June 25, 2018.  *Joint Exhibit 115.*

On March 8, 2018, the SEC delivered a subpoena to Bartoletta for UNation records.  *Joint Exhibit 119.*   Bevilacqua's team continued to work on the SEC filing, exchanging drafts with other team members.  *Joint Exhibit 122.*   His team and other UNation and Boustead lawyers discussed subpoenas for UNation records from the FBI and SEC but continued to press on.  *Joint Exhibits 123, 124.*   Although the auditor refused to finalize the audit until the SEC concluded its investigation, the Boustead team continued to work on promotional aspects of the prospective IPO throughout the spring and summer.  *Testimony of Dan McClory; Testimony of Gregg Jaclin; Joint Exhibits 129, 130.*

On July 23, 2018, the auditor notified Bartoletta that it would resume work on the audit but would not release the financial statements without the SEC clearance of its investigation.  Bartoletta immediately forwarded that message to McClory and Bevilacqua.  *Joint Exhibit 131.*   To proceed toward filing with the SEC "no later than August 15th," Jaclin emailed McClory and Bartoletta on July 25, 2018.  *Joint Exhibit 133.*   Boustead continued to update information regarding successful and unsuccessful IPO filings, and provide that information to Ingargiola and Jaclin to improve UNation's chances of success with the SEC.  *Joint Exhibit 135.*

### C. Post-Contract Activity

Although the SEC investigation did not conclude in July, 2018 as expected, McClory continued to provide Bartoletta with information about IPO filings and funding resources.  *Joint Exhibits 137, 138.*   On August 29, 2018, Bartoletta emailed McClory, copying others at Boustead, UNation and attorneys, thanking McClory for a "great update" and noting that

> We are [in] prime position to make this happen.  The delay is turning out to be a "God send" on all levels.  Mainly on growth and the fact that we have a spotless organization.

5

*Joint Exhibit 139.* After a cordial meeting between UNation executives and the SEC investigative team, the IPO team anticipated receiving the SEC clearance very soon. McClory, Moore and the UNation team maintained a continuous flow of information, to prepare for a quick filing upon receipt of the SEC clearance letter. Emails flew between Bartoletta and McClory on October 17 and 18, 2018, with the clear assumption that Boustead would underwrite the IPO once the SEC cleared its investigation. *Testimony of Gregg Jaclin; Joint Exhibits 144, 145, 146, 147, 148, 149, 150.* On January 30, 2019, Bartoletta emailed McClory to include him in a meeting about the IPO. *Joint Exhibit 156.* Jaclin and others representing UNation continued to exchange emails with McClory regarding UNation's progress toward an IPO until March 28, 2019, when UNation's counsel advised McClory that their contract expired on August 16, 2018 and had not been extended. *Joint Exhibit 161.*

The SEC concluded its investigation in favor of UNation and Bartoletta on July 23, 2019. *Joint Exhibit 169.*

### D. Compensation Claims

The contract required UNation to pay the Initial Advisory Fee of $50,000 when UNation received $500,000 "from its current Regulation D offering following the execution date of this agreement," rather than on execution. *Joint Exhibit 1, Section 2 (c).* The contract also required UNation to "furnish Boustead with all information concerning" transactions with investors. *Joint Exhibit 1, Section 11.* Although Bartoletta and McClory exchanged frequent phone calls and emails, that information was not provided.

On October 19, 2017, after learning from Bartoletta that UNation had received at least $900,000 in investments since execution of their contract, McClory sent an invoice to UNation for the Initial Advisory Fee of $50,000 and the Success Fee of $63,000, 7% of the $900,000 investment. *Joint Exhibits 40, 41.* That invoice received no response. Boustead sent another invoice for the Initial Advisory Fee of $50,000 on January 30, 2018, which UNation paid by wire transfer on the same day. *Joint Exhibits 73, 74.*

To facilitate payment of the Success Fees, the contract required establishment of an escrow for each transaction "or in such other manner as may be acceptable to Boustead" to provide direct payment to Boustead based on a percentage of each investment. *Joint Exhibit 1, Section 2.* The parties agree that no escrow accounts were established.

McClory included requests for investment information in various emails and conversations with Bartoletta and others at UNation. *Testimony of Dan McClory.* For example, on February 26, 2018, in an email to Bartoletta explaining Boustead's suggestion that it step aside for two weeks until the completion of the audit and engagement of new counsel, McClory repeated Boustead's "need to get paid for all the pre-IPO funds that have been raised" and asked "When can you commit to squaring up on those commissions John, and how much has been raised since our engagement over six months ago?" *Joint Exhibit 108.*

6

The next day, McClory received a text from Gregg Jaclin, UNation's adviser, saying that Bartoletta "is getting a spreadsheet together to figure out what he owes you." *Joint Exhibit 111.* That spreadsheet was never sent.

The parties continued to work toward filing the IPO, despite a work cessation by the auditor, change of attorney, and, most significantly, an SEC investigation that dragged on for more than two years, as evidenced by numerous email exchanges between Bartoletta, McClory, Moore, Jaclin and Ingargiola, among others. Finally, on Monday, March 11, 2019, McClory emailed Bartoletta reminding him of their conversation on the previous Friday, again requesting "a schedule of the pre-IPO funding that UNATION has taken on since Boustead's engagement" so that they can "finalize the amount to be settled from IPO proceeds" since Moore agreed to that deferral instead of immediate payment. *Joint Exhibit 159.* Bartoletta called McClory, who emailed a few days later, asking that the schedules show the funds raised in 2017 and 2018 separately, "so we can prepare the invoices correctly." *Joint Exhibit 160.*

The parties agree that no such spreadsheet was received, nor any Success Fees paid, before this arbitration.

### 1.  **Direct Stock Purchases**

The evidence shows that, during the contract term from August 17, 2017 to August 16, 2018, UNation received equity investments from direct stock purchases from investors in the amount of $ 4,982,368.00. The cash Success Fee on those investments, at the rate of 7%, equals $348,765.76. *Joint Exhibit 171.*

Stock purchases from the same investors during the tail period of August 17, 2018 to August 16, 2019 totals $1,449,980.00. The cash Success Fee on those investments, at the rate of 7%, equals $101,428.60. *Joint Exhibit 171.*

### 2.  **Debt Conversion**

In the March, 2018 IPO draft prepared by Belivacqua, at page 9 of Risk Factors, UNation discloses that:

> We have entered into a loan agreement with a related party[,] . . . Marquesas Capital Partners, LLC, or Marquesas Capital, a company controlled by our executive officers. . . . The note with Marquesas Capital was renewed and amended as of June 30, 2017. *A portion of the loan has been paid down in exchange for shares of our Common Stock and Series A Preferred Stock.*

*Joint Exhibit 122, Boustead 015189 (emphasis added).* No disclosure was made in discovery about this debt conversion. During his testimony on the last day of this hearing, Bartoletta disclosed that UNation refinanced part of the Marquesas debt to stock, converted at $6 per share, at the end of 2017 or early 2018. *Testimony of John Bartoletta.*

7

Dennis Thomas, Treasurer and CFO of UNation, explained the transaction. Marquesas loaned UNation funds on January 13, 2013, memorialized in a note payable with interest. On December 31, 2017, UNation issued 594,045 shares to Marquesas to retire the note of $2,604,542 plus interest of $959,729, or a total of $3,564,271. *Testimony of Dennis Thomas.* That transaction reflects a value of $6.00 per share paid by Marquesas by retiring its loan to UNation.

The cash Success Fee due on that transaction, at the rate of 7%, equals $249,498.97.

### 3. Warrants

In addition to cash, Success Fees include warrants for future stock based on the fair market value of the stock at the time of the transaction on which it is awarded, at 7% of the number of shares purchased. Because the price paid by investors over the relevant time period varied, Boustead seeks the warrants at the rates suggested by Bartoletta's testimony.

Boustead seeks 112,236 warrants for shares at $6.00 per share, plus 138,141 warrants for shares at $2.00 per share, with a cashless exercise provision, within five years of issuance of the IPO.

## V. Analysis

### A. Alleged Ambiguity

UNation contends that certain terms of the contract are ambiguous and must be construed in its favor because Boustead drafted the contract. Bartoletta is not a naif, but a sophisticated, successful investor and entrepreneur. He had the opportunity to consult with his attorneys, advisers and others on any matters with which he was unfamiliar. Clearly, he should have understood every term of the contract he authorized to be signed for UNation by its CFO.

A comparison of the initial draft agreement, the proposed agreement returned by John Bartoletta on behalf of UNation, and the final contract demonstrates that the final agreement reflects UNation's requested revisions. *Joint Exhibits 1, 17 and 21.* Although Bartoletta testified that he made no changes, and Dennis Thomas, CFO and Managing Member of UNation, did not recall making any changes, the final contract demonstrates that UNation revised several terms which were incorporated in the final agreement.

I find no ambiguity in the contract, and no reason to alter the contract terms.

### B. Best Efforts Engagement

UNation initially protested that Boustead did not provide its "best efforts" as required by the contract, arguing that the term is ambiguous. As expert witness Lisa Roth testified, without objection, "best efforts" in this contract is not used in its ordinary sense. Rather, "best efforts engagement" is a term of art in the underwriting and investment

8

banking industry and refers to representation by an underwriter not investing its own funds in the client company.

The term "best efforts engagement" is intended to distinguish that type of involvement from a "firm commitment engagement" by an underwriter/investor. *Testimony of Lisa Roth.*

Definable terms of art in a contract between commercial entities are not ambiguous; commercial parties are presumed to understand the contract terms.

### C.     Abandonment

UNation contends that Boustead is not entitled to Success Fees because it abandoned the contract in early April, 2018, shortly after UNation received a subpoena from the SEC, and the auditor refused to certify the audit until the SEC cleared its investigation.   *Joint Exhibit 163.*   Inexplicably, Bartoletta testified that Boustead abandoned the contract on February 24, 2018 with the email withdrawing its name from the unsent IPO document.  Joint Exhibit 108.  He insisted that Boustead did no further work after that time, and that any communication between him and McClory after that was only social.  *Testimony of John Bartoletta*.

 The chain of emails reflecting work performed by Boustead, including communications directly with UNation officers and consultants, shows that Boustead did not "abandon" UNation until ordered to stop work by UNation's attorney a year later.    For example, UNation's IPO adviser testified that, in the summer and fall of 2018, McClory remained committed to UNation, and that Boustead was "still the banker [and] wanted to get the deal done."   *Testimony of Gregg Jaclin.*   Jaclin proposed an update call with McClory, Bevilacqua and Bartoletta in January, 2019 to review filing options and discuss changing auditors. *Joint Exhibit 156.*    As far as Jaclin and Ingargiola knew, Boustead continued as underwriter and an integral part of UNation's IPO team until completion of the IPO.  *Testimony of Luisa Ingargiola; Testimony of Gregg Jaclin.*

I find no credible evidence to suggest that Boustead abandoned its obligations to UNation during or after the contract period.

### D.     Failure to Produce Investments

 UNation also argues that Boustead is not entitled to the Success Fees defined in the contract because it failed to produce any investments in UNation.  *Joint Exhibit 163.*

UNation misapprehends the plain language of the contract.  Success fees are due Boustead "[f]or any equity investment into the Company [UNation]" without regard to the source of that investment.  This is an "exclusive" contract; the promoter of the investment is immaterial.   UNation announced its retention of Boustead to investors and potential investors, acknowledging that Boustead's reputation enhanced the solidity of Unation's investment potential.   And, UNation continued to rely on Boustead's expertise and

9

reputation throughout the contract term and beyond, so that it was positioned for a successful IPO whenever the SEC concluded its investigation in UNation's favor.

Although Bartoletta claimed that he did not believe that Boustead was entitled to fees on money he raised for UNation before the IPO, his adviser Gregg Jaclin testifed that he specifically advised Bartoletta that he would have to pay Boustead's fees on investments "regardless of who brought it in."  *Testimony of John Bartoletta; Testimony of Gregg Jaclin.*

Jaclin correctly understands the clear language of the contract.

### E.  Breach of Contract

Boustead insists that it fully performed its obligations under the contract, and is entitled to Success Fees on the investments made by all investors during the contract term, made by the same investors in the following year, and by Marquesas Capital Partners, LLC. in converting debt owed to it by UNation into stock.    UNation contends that Boustead should receive no Success Fee because it only provided advisory services and did not promote any investments in UNation.   Alternatively, UNation contends that Boustead should receive no Success Fees for investments made after its alleged abandonment in April 2018 and that a creditor's exchange of its loan for stock should not be construed as an investment generating a Success Fee.

The evidence shows, conclusively, that Boustead fulfilled its obligations to UNation.  UNation's advisers Luisa Ingargiola and Gregg Jaclin both testified to the quality of services provided by Boustead throughout the contract period and beyond.  *Testimony of Luisa Ingargiola, Testimony of Gregg Jaclin.*  In addition, Jaclin testified that he spoke regularly with Bartoletta regarding the IPO process and costs involved.

Although required by the contract, UNation did not provide the accounting of equity investments during the contract period.   Through discovery for this proceeding, UNation produced information regarding equity investments in the form of stock purchases, but did not produce information regarding equity investment through convertible debt until the last day of the hearing.

The parties do not dispute that the relevant contract term provides Boustead with a "Success Fee, payable in cash, equal to seven percent (7%) of the gross proceeds received by [UNation]" from equity investments made during the contract period and during the following year by the same investors, plus warrants for future stock in the resulting company.  *Joint Exhibit 1, Section 2 (a)(iii).*

Despite UNation's clear obligation to provide accounting of investments, and routine payment of Success Fees, Bartoletta refused to do either.   Jaclin and Ingargiola both testified that Boustead met or exceeded their expectations at all times, that Bartoletta never indicated he had any concerns about Boustead's work, but that Bartoletta needed to conserve UNation assets, was "short of cash," and intended to delay paying Boustead's

fees.  *Testimony of Luisa Ingargiola; Testimony of Gregg Jaclin.*   Bartoletta repeatedly ignored requests for accounting, requests for payment, and even offers to defer payment of the Success Fees until the IPO was filed.

By ignoring its obligations to Boustead, despite Boustead's fulfillment of its obligations, UNation materially breached the contract between them.

## VI.    Award

The totality of the evidence establishes that Boustead performed all services required under the contract.    UNation's defense that Boustead abandoned the contract is not supported by the evidence.

UNation breached their contract by failing to pay the Success Fees owed to Boustead under Section 2(a)(iii) of their contract.   That provision states:

> For any equity investment into [UNation], including, without limitation, any investment in or *purchase of common stock, preferred stock, . . . convertible debt, . . . and any other form of debt instrument involving any other form of equity participation*, whether Pre-IPO or as a part of the IPO or after, Boustead shall receive upon the closing of such Transaction:  (i) a Success Fee, payable in cash, equal to seven percent (7%) of the gross proceeds received . . . plus (ii) warrants in the entity finances . . .  equal to seven percent (7%) of the gross proceeds received by [UNation] . . . at a strike price equal to . . . (100%) of the fair market value of the Common Stock . . . . as of the date of the closing of the Transaction . . . at any time within five (5) years from issuance.

*Joint Exhibit 1, Section 2(a)(iii)(emphasis added).*

I therefore award compensation to Boustead Securities, LLC from UNation, Inc. in accordance with their contract, plus interest at the legal rate.

UNation, Inc. must pay Boustead Securities, LLC $669,684.33 in Success Fees, plus interest of 8% from the end of the tail period (August 16, 2019) until paid.   If paid by November 15, 2021, the interest accrued will be $125,943.19.

In addition, UNation, Inc. must issue 112,236 warrants to Boustead Securities, LLC for shares at $6.00 per share, and 138,141 warrants for shares at $2.00 per share, in compliance with the terms set forth in the contract.

October 26, 2021                              *Sherrie L. Krauser, Judge (ret.)*
                                                        Sherrie L. Krauser, Judge *(ret.)*
                                                        JAMS Arbitrator

## PROOF OF SERVICE BY E-Mail

Re: Boustead Securities, LLC / UNation, Inc. fka UNation, LLC
Reference No. 1410008338

I, Salvador Sauceda-Guzman, not a party to the within action, hereby declare that on February 16, 2022, I served the attached Final Award on the parties in the within action by electronic mail at Washington, DISTRICT OF COLUMBIA, addressed as follows:

| | |
|---|---|
| Eric Neilsen Esq.<br>Neilsen Law Group<br>100 2nd Ave N.,<br>Suite 240<br>Saint Petersburg, FL   33701<br>Phone: 727-350-3240<br>eneilsen@neilsenlawgroup.com<br>   Parties Represented:<br>   John Bartoletta<br>   UNation, Inc. fka UNation, LLC | Jeffrey K. Compton Esq.<br>Craig Hughes Esq.<br>Markun Zusman Freniere Compton, LLP<br>17383 Sunset Blvd.<br>Suite A380<br>Pacific Palisades, CA   90272<br>Phone: 310-454-5900<br>jcompton@mzclaw.com<br>chughes@mzclaw.com<br>   Parties Represented:<br>   Boustead Securities, LLC |

I declare under penalty of perjury the foregoing to be true and correct. Executed at Washington, DISTRICT OF COLUMBIA on February 16, 2022.

*Salvador Sauceda-Guzman*
Salvador Sauceda-Guzman
JAMS
SGuzman@jamsadr.com